UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT DUNPHY, | : | CIVIL NO: 1:15-CV-00218 |
| | : | |
| Petitioner, | : | |
| | : | (Judge Caldwell) |
| v. | : | |
| | : | |
| R.A. PURDUE, | : | |
| | : | (Magistrate Judge Schwab) |
| Respondent. | : | |
| | : | |

## REPORT AND RECOMMENDATIONS

On January 30, 2015, the petitioner, Robert Dunphy, a federal prisoner at FCI-Schuylkill initiated this action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Dunphy claims that the Federal Bureau of Prisons ("BOP") abused its discretion by denying him a sentence reduction even though he had successfully completed the Residential Drug Abuse Program.  For the reasons that follow, we recommend that Dunphy's petition be denied.

### I.     Relevant Background.

On or about February 20, 2009, Dunphy was sentenced in the United States District Court for the Eastern District of Pennsylvania to a 108-month term of imprisonment after being convicted of various offenses including Conspiracy to Burglarize Pharmacies, Pharmacy Burglary and Aiding and Abetting, and

Possession with Intent to Distribute Controlled Substances and Aiding and Abetting. *Doc 10-1* at 30-31. The sentencing court recommended that Dunphy, while incarcerated, "shall receive such residential drug and alcohol evaluation, counseling, treatment and therapy, including the 500 hour drug treatment program, as deemed appropriate by the United States Bureau of Prisons." *Id*. at 31. The events which led to Dunphy's conviction and subsequent sentencing were described in his Pre-Sentence Report as follows:

> [Dunphy] joined the conspiracy in the early stages of its operation for the purpose of assisting in planning and participating in the commission of the Medicine Shoppe Drugs pharmacy burglary in Jeffersonville, Pennsylvania, on July 26, 2003; Dunphy was joined by Donald Homan, Joseph Wojtiw, and Joseph Malkowski. Homan made entry into the pharmacy, with Wojtiw acting as lookout. Dunphy assisted in providing information concerning the location of the pharmacy. While the others broke into and entered the pharmacy, Dunphy and Malkowski remained outside and some distance away from the pharmacy, but maintained contact by telephone with Wojtiw and Homan, the sole burglar who gained entry.

*Id*. at 5.

On January 11, 2014, a Drug Abuse Program Coordinator determined that Dunphy was qualified to participate in the 500-hour Residential Drug Abuse Program ("RDAP"). *Id*. at 4. On February 4, 2014, however, BOP attorney Allan John-Baptiste and other staff at the BOP's Designation and Sentence Computation Center ("DSCC") completed an offense review and determined that even if Dunphy successfully completed RDAP, he was precluded from receiving early

release under 28 U.S.C. § 3621 because of his convictions for Pharmacy Burglary and Conspiracy to Burglarize Pharmacies. *Id*.  DSCC staff determined that Dunphy's underlying offense of Pharmacy Burglary precluded early release pursuant to Section 3(a) of BOP Program Statement 5162.05 and 28 C.F.R. § 550.55(b)(5)(iii) because the offense is "a crime of violence" and "by its nature or conduct, presented a serious potential risk of physical force against the person or property of another." *See id*. at 6, 10, 26.  Additionally, DSCC staff found that Dunphy's underlying offense of Conspiracy to Burglarize Pharmacies precluded early release according to Section 3(c) of BOP Program Statement 5162.05 and 28 C.F.R. § 550.55(b)(5)(iii) since the offense "by its nature or conduct, presented a serious potential risk of physical force against the person or property or another" and is a "conspiracy which involved an underlying offense that is precluding." *See id*. at 6, 15, 26.  In making the aforementioned determinations, DSCC staff reviewed both Dunphy's PSR as well as his Criminal Judgment. *Id*. at 4-5.

   In his habeas petition, Dunphy argues generally that the BOP abused its discretion when it decided, based on the nature of Dunphy's underlying offenses, to preclude a sentence reduction for successful completion of RDAP.  Dunphy argues that the BOP erred in determining that his underlying offenses of Pharmacy Burglary and Conspiracy to Burglarize Pharmacies were crimes of violence that would preclude early release.  Specifically, Dunphy avers that the offenses could

3

not be considered violent because the burglaries were of an unoccupied pharmacy outside of its normal business hours, and Dunphy, himself, was "miles away" when the actual burglary occurred. *Doc. 1* at 3.  He also argues that to be considered a crime of violence, a burglary must take place in a "dwelling" or "a house or building where people live." *Id*. at 4.  And commercial retail property such as a pharmacy, Dunphy argues, does not constitute a "dwelling."  Since the BOP, according to Dunphy, wrongfully classified his underlying offenses as violent, thus precluding him from a chance at early release, he requests that this Court order the reduction in sentence to which he believes he is entitled based on his successful completion of the RDAP program.  Dunphy avers that he has exhausted all of his administrative remedies, and the respondent agrees.

**II.    Discussion.**

First, we reject any suggestion that the BOP's failure to provide Dunphy a sentence reduction violated due process.  The Fifth Amendment's Due Process Clause provides that "no person shall be . . . deprived of life, liberty, or property, without due process of law."  U.S. CONST. amend. V.  A due process claim requires a two-part analysis.  First, the court must determine whether the interest asserted by the petitioner is within the scope of protection of life, liberty, or property found in the Due Process Clause.  *Shoats v. Horn*, 213 F.3d 140, 143 (3d

Cir. 2000). Second, if the interest is one that is protected by the Due Process Clause, "the question then becomes what process is due to protect it." *Id.* Here, the liberty interest asserted by Dunphy is that of a sentence reduction to which he believes he is entitled based on his successful completion of the RDAP. Dunphy asserts that the BOP's alleged abuse of discretion in deeming his underlying burglary offenses as crimes of violence deprived him of this early release.

To the extent that Dunphy is asserting a due process claim such claim is without merit because this Court has previously held that an individual "ha[s] no liberty interest in a sentence reduction under § 3621." *Hugel v. Bledsoe*, 2009 WL 1406252, at *4 (M.D. Pa. May 18, 2009) (citing *Richardson v. Joslin*, 501 F.3d 415 (5th Cir. 2007)). Furthermore, even if Dunphy's offenses were in fact nonviolent offenses, he would not be automatically entitled to a sentence reduction upon completion of the RDAP. The statutory language of 28 U.S.C. § 3621 suggests that the BOP "may" reduce the sentence of a nonviolent offender after successful completion of a drug treatment program, meaning that "[w]hen an eligible prisoner successfully completes drug treatment, the [BOP] thus has the *authority*, but not the *duty*, both to alter the prisoner's conditions of confinement and to reduce his term of imprisonment. *Lopez v. Davis*, 531 U.S. 230, 241 (2001) (emphasis added). Thus, Dunphy had no liberty interest in receiving a

§ 3621(e)(2)(B) sentence reduction, and there can be no procedural due process violation. *Richardson*, 501 F.3d at 420.

Second, we reject Dunphy's contention that the BOP abused its discretion by denying him a sentence reduction.  Again, Dunphy was not *entitled* to a sentence reduction upon completion of the RDAP, and the BOP was not obliged to reduce his sentence upon completion of the program.  Rather, the BOP had discretion to determine whether Dunphy should be afforded a sentence reduction after he completed RDAP, and a habeas petitioner cannot prevail because he "merely disagrees with a BOP decision that is within its discretion to make." *See Hugel*, 2009 WL 1406252, at *5.  Dunphy argues, however, that even if he was not entitled to early release and it was within the BOP's discretion to decide whether to afford him a sentence reduction, the BOP abused its discretion when it classified his burglary offenses as "crimes of violence" and decided to preclude his sentence reduction.

BOP regulations provide for the categorical denial of eligibility for early release to certain classes of prisoners.  *See* 28 C.F.R. § 550.58; BOP Program Statement 5162.05.  These regulations "have given rise to litigation, specifically whether the categorical exclusion of certain classes of inmates was a proper exercise of the BOP Director's discretion." *Gardner v. Grandolsky*, 585 F.3d 786, 789 (3d Cir. 2009).  The Supreme Court has held, however, that 18 U.S.C.

6

§ 3621(e)(2)(B) grants the BOP the discretion to categorically exclude certain classes of prisoners from early release eligibility. *See Lopez*, 531 U.S. at 241, 244 (finding the BOP properly exercised its discretion in precluding from early release eligibility the class of prisoners convicted of a felony involving possession of a dangerous weapon). Furthermore, the categorical exclusion of prisoners convicted of certain types of offenses is "not arbitrary and capricious" when the "language of the regulation itself facially manifests a concern for protecting the public safety." *See Gardner*, 585 F.3d at 793.

We cannot conclude that the BOP acted arbitrarily when it determined that Dunphy's burglary offenses were crimes that preclude early release. Section 3 of the BOP's Program Statement 5162.05 dictates that for purposes of determining early release ineligibility, certain crimes should be considered "crimes of violence" in "*all* cases." *See* BOP Program Statement 5162.05 § 3(a). One of the offenses categorized as a crime of violence in *all* cases is "robberies and burglaries involving controlled substances." BOP Program Statement 5162.05 § 3(a)(1). This categorization is a legitimate exercise of the BOP's discretion, and it cannot be said that applying this categorization to Dunphy's offense was an abuse of discretion. Despite the specific facts pleaded by Dunphy, the pharmacy burglary in which he took part was undisputedly a "burglary involving controlled substances," and since the BOP in its discretion has determined that such a crime precludes

early release in *all* cases, the BOP here properly applied its own legitimate categorization to Dunphy's early release eligibility determination.

In addition to the categorization of specific offenses as violent in *all* cases, 28 C.F.R. § 550.55 provides, in relevant part, that the BOP *may at its discretion* preclude an inmate from receiving early release if the inmate has a current felony conviction for "an offense that by its nature or conduct, presents a serious potential risk of physical force against the person or property of another." 28 C.F.R. § 550.55(b)(5)(iii); *see also* BOP Program Statement 5162.05, § 4. The BOP determined that Dunphy's offenses fit this description as well, and we cannot conclude that the BOP abused its discretion in doing so. It was reasonable for the BOP to determine that a pharmacy burglary would fall within the 28 C.F.R. § 550.55(b)(5)(iii) description, considering a burglary by its nature at least presents an inherent risk of physical force against another's property.

In conclusion, Dunphy was not entitled to a sentence reduction upon his completion of the RDAP, and the BOP did not abuse its discretion in determining that Dunphy's underlying offenses precluded him from receiving a sentence reduction. We, therefore, conclude that Dunphy's habeas petition is without merit.

### III.  Recommendation.

Based on the foregoing reasons, **WE RECOMMEND** that Dunphy's petition for the writ of habeas corpus (*Doc. 1*), pursuant to 28 U.S.C. § 2241, be **DENIED.**

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this **17th** day of **August, 2015**.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge